**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No:

MICHELLE FARIS

    Plaintiff,

v.

SOUTHERN UTE INDIAN TRIBE,

RED WILLOW PRODUCTION CO., and

GROWTH FUND MANAGEMENT COMMITTEE.

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Now comes the Plaintiff, Michelle Faris, by and through counsel, and for her Complaint against Defendants states as follows:

## I.    INTRODUCTION

1. Plaintiff worked for the Southern Ute Indian Tribe Growth Fund's Red Willow Production Company ("Red Willow") in its Land Division for twenty-six years. Plaintiff received positive performance reviews and no disciplinary actions for the entirety of her career working for the Defendants. In 2020 Ms. Faris informed Defendants that she would be retiring at the end of 2022. Ms. Faris turned 55 in 2022 and accumulated 25 years of full-time employment status – each or which are a requirement of the Tribe's Long Term Incentive Plan (LTIP) for an employee to obtain a 50% distribution of their account. Instead, Defendants fabricated a for-cause termination to avoid paying Plaintiff her earned and accrued benefits in accordance with the terms of the LTIP.

## II.      PARTIES

2. Plaintiff, Michelle Faris, is an adult woman who was employed by the Tribe and Red Willow from 1995 to 1996 as a contract employee and a full-time employee from December 13, 1996 until November 18, 2021.

3. Plaintiff is a covered employee and a participant in the LTIP under ERISA. 29 U.S.C. 1002(C)(6) and (7).

4. Defendant Southern Ute Indian Tribe (the "Tribe") is a tribal government with its principal place of business located at P.O. Box 737, 356 Ouray Drive, Ignacio, Colorado 81137.

5. Defendant Red Willow Production Company is a private oil and gas company which is also a division of the Southern Ute Indian Tribe Growth Fund and is located at 14933 Highway 172, P.O. Box 369, Ignacio, Colorado 81137. Red Willow Production Company describes itself as follows:

   a. **Our Purpose**. Red Willow Production Company is a division of the Southern Ute Indian Tribe Growth Fund. Our mission is to create value for the Southern Ute Indian Tribe by exploring for and developing oil and gas resources while prioritizing safety, fiscal responsibility and respect for the environment and Tribal Cultural resources.

   b. **Not just any energy company**. Red Willow Production Company is a private oil and gas exploration and production company owned by the Southern Ute Indian Tribe and headquartered in Ignacio, Colorado. Founded in 1992, it operates on the Southern Ute Indian Reservation as Red Willow Production Company. Off the reservation, it operates under several LLCs, most notably Red Willow Offshore, LLC, and Red Willow Production, LLC. It has grown significantly since inception and is now one of the top 25 largest privately owned oil and gas companies in the US.

   Red Willow holds an interest in over 1,800 operated and non-operated wells with net production in excess of 70 billion cubic feet of gas equivalent per year. Although Red Willow has expanded operations significantly off the reservation, the San Juan Basin remains the backbone of the company's operations. The company also has a significant interest in a number of projects in the Deepwater Gulf of Mexico and is actively developing assets in the Delaware basin in West Texas and other onshore regions.

Red Willow Production Company's "About Us" tab on its website, June 21, 2022, https://www.rwpc.us/

6. The Tribe and Red Willow are covered employers as defined by ERISA as they were acting directly as employers, or indirectly in the interest of an employer, in relation to the LTIP or because the Tribe and Red Willow were acting as a group or association of employers acting for an employer in such capacity.  29 USC § 1002(C)(5).

7. Defendant Growth Fund Management Committee manages existing investments and reviews and presents new investments to Southern Ute Tribal Council.  It ensures that the investment portfolio meets diversity, risk, and liquidity requirements. The Management Committee also reviews and reports Growth Fund performance to Tribal Council periodically.  Its principal place of business is located at P.O. Box 737, 356 Ouray Drive, Ignacio, Colorado 81137. 29 USC § 1002(C)(16)(a)(i).

8. Based on the above, Defendants are engaged in commerce or industry affecting commerce.

### III.   JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the federal counts in this Complaint pursuant to 28 U.S.C. § 1331, because they arise under the laws of the United States.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Colorado, including in this District and Division.

### IV.  STATEMENT OF FACTS

11. Red Willow Production Company was created in 1992 as a private oil and gas company (see paragraph 5b, above).

12. Plaintiff commenced her employment with Defendants in 1995 as a contract employee.

13. On or about December 13, 1996 Defendants made Ms. Faris a full time employee in the land division of Red Willow Production Company.

14. Ms. Faris was initially hired as an Oil and Gas Accountant and slowly climbed the ranks of the company receiving 5 promotions over her career.

15. Ultimately, Ms. Faris became the Director of Land in April 2015

16. At all times Plaintiff was a loyal and dedicated employee. Throughout her tenure, her performance exceeded the Defendants' legitimate expectations.

17. Plaintiff never received disciplinary action or any form of corrective action in relation to the performance of her job.

18. In her more than twenty years as an employee of Defendants, Ms. Faris never received below a 4 (exceeds expectations) on any performance review.

### ERISA Governance of the LTIP

19. In 2006 Congress amended ERISA under the Pension Protection Act of 2006. This amendment to ERISA makes the federal law applicable to tribes unless there is a separately established health plan for its employees performing essential governmental functions (e.g., police and firefighting).

20. The Defendants' LTIP is a Covered plan under ERISA because it is defined as an Employee Benefit Pension Plan. 29 U.S.C. § 1003(a) and 29 U.S.C. §1002(2).

21. ERISA defines an exempt "governmental plan" as a plan which is "established and maintained by an Indian tribal government, a subdivision of an Indian tribal government, or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential

4

governmental functions but not in the performance of commercial activities (whether or not an essential government function)." 29 U.S.C. §1002(32) (some internal parentheticals removed).

22. Following this amendment subjecting non-governmental tribal plans to ERISA, Defendants through the Tribe's Growth Fund created an employee welfare plan titled the Long-Term Incentive Compensation Plan (LTIP) for the benefit of certain Red Willow employees with an effective date of October 1, 2007.  (Exhibit A)

23. The Southern Ute Indian Tribe's operations are bifurcated into two specific entities – the permanent fund and the growth fund.

24. The Tribe explains the difference between these funds as follows,

   a. "The cost of the government activities and services is funded by the Tribe's Permanent Fund. This endowment fund operates separately from the business and investment activities that are managed by the Tribe's Growth Fund." Southern Ute Indian Tribe Growth Fund's "About" on its website, July 10, 2022 https://www.sugf.com/

   b. The Growth Fund's Mission Statement is: "The Growth Fund is the business arm of the Southern Ute Indian Tribe that exists to grow economic prosperity for the Tribe and its members by managing the Tribe's businesses responsibly and developing new growth opportunities prudently." Southern Ute Indian Tribe Growth Fund's home pate on its website, July 10, 2022 https://www.sugf.com/about/

25. The Growth Fund's website goes on to summarize its role as follows: "The Southern Ute Indian Tribe Growth Fund operates and manages the Southern Ute Indian Tribe's businesses and business investments.  In this role, the Growth Fund oversees a significant portfolio of companies

and investments in energy, real estate, construction, and private equity. The Growth Fund's headquarters are located in the heart of the Southern Ute Indian Reservation in Ignacio, Colorado. Since the Tribe created the Growth Fund in 2000, it has committed substantial capital to a broadening range of businesses and investments. The value of the Growth Fund's holdings has grown substantially. Operations and assets are spread out over fourteen states and the Gulf of Mexico." Southern Ute Indian Tribe Growth Fund's home page on its website, July 10, 2022 https://www.sugf.com/

26. Participation in the LTIP was offered to Ms. Faris, other employees of Red Willow, and upon information and belief, employees involved in the Growth Fund's holdings and operations spread throughout fourteen states and the Gulf of Mexico.

27. Red Willow employees, and specifically Ms. Faris's job, in the land division of a private oil and gas company was in no way related to the performance of any essential governmental functions of the Southern Ute Indian Tribe and was focused solely on commercial activity as described on Red Willow's website (*see* ¶¶ 5(a, b) and 23-25).

28. As such, most if not all of the employees who participated in the LTIP were not engaged in performing essential governmental functions but rather were engaged in the performance of purely commercial activities performed by the Growth Fund, which subjects the plan to ERISA governance.

29. In addition, an LTIP statement that Ms. Faris received on January 27, 2021 contains a disclaimer which reads, "This is a non-qualified plan under ERISA." (Exhibit A)

30. The LTIP statement admits that it is subject to ERISA governance. If the plan were not subject to ERISA governance, a disclaimer about whether the plan is qualified or not would not be necessary. Therefore, subjecting the plan to ERISA Sections 510 and 502.

**Defendants' Wrongful Termination of Plaintiff's Employment**

31. Ms. Faris's participation in the LTIP was a primary reason that she remained an employee at Red Willow for her entire career.

32. Ms. Faris stayed in her position for more than 25 years with her eyes on the increased payout of her incentive plan that she would have access to after 25 years of service or turning 55 years old, both of which would occur in 2022.

33. In 2022, Ms. Faris turned 55 years old, meaning her LTIP distribution would have gone up to 50%, or approximately $118,000.  Plus, she would be able to access her 401k without the additional 10% IRS penalty.

34. In 2020, Ms. Faris began having regular conversations with her managers, supervisors, and co-workers informing them that she was planning to retire at the end of 2022.

35. In particular, Ms. Faris had a conversation with Jason Hooten, the President and COO of Red Willow and specifically informed him that he planned to retire at the end of 2022 and that she planned to request a cash out of her LTIP account.

36. Ms. Faris did not believe that she would ever be terminated based on the regular and consistent positive feedback, her years of loyal dedication to the company, and lack of any legitimate reason for termination.

37. Despite warnings from her co-workers that Defendants would discriminate or interfere with her ability to obtain the plan benefits, she decided to stick with her plan to provide notice and retire in 2022.

38. Likewise, Ms. Faris had witnessed many co-workers over the preceding years be laid off based on a reorganization or elimination of their position.  In that instance, they received 100% of their LTIP accrued benefits plus a generous severance package.

39. Because Ms. Faris was confident in her job performance, she believed that if her position was eliminated, she would be handled like many of her co-workers before her and would still receive her benefits.

40. On August 2021 Ms. Faris received her 2020/2021 performance evaluation. Her overall rating was "Consistently Exceeds Expectations – 4.60".

41. On September 23, 2021, Ms. Faris received a Market-Based Wage Freeze memo from Jason Hooten stating that she would not receive an annual pay increase due to her pay rate.

42. On November 18, 2021 without any warning, advanced notice, or any prior discipline, Ms. Faris was given a termination memo based on entirely false allegations against her.

43. Ms. Faris's supervisor's termination memo repeatedly contradicts his own 2020/2021 performance evaluation of Ms. Faris's, each of which he signed and approved.

44. Ms. Faris's employment was terminated effective immediately and she immediately lost all of her accrued benefits through the LTIP.

45. Based on information and belief, following Defendants' decision to terminate Plaintiff's employment Jason Hooten held an all-employee meeting and stated that Ms. Faris was no longer with the company and that her position would not be re-filled. Mr. Hooten announced that he would be restructuring the company to eliminate Ms. Faris's position.

46. Based on information and belief, Defendants terminated Plaintiff's employment because if she was permitted to retire as planned, they would be required to immediately pay her fully vested 50% of her benefits under the LTIP.

47. Based on information and belief, Defendants made a financial decision that they did not want to or could not pay Ms. Faris her benefits, so they manufactured cause to terminate her employment to eliminate or reduce Plaintiff's distributions under the plan.

48. Defendants terminated Plaintiff's employment to interfere with her right to obtain her fully vested 50% benefits in the LTIP.

49. Plaintiff's age and years of service triggered here eligibility for a 50% distribution of her LTIP Benefits in 2022 and was a motivating factor for Defendants' decision to terminate her employment immediately prior to her eligibility taking effect.

50. Mr. Hooten then moved all of Ms. Faris's direct reports in the Land department to an existing employee Nathan Wickett, Land Manager.  Mr. Wickett reported directly to Ms. Faris prior to termination.

51. If Ms. Faris had been laid off due to a restructure or her position eliminated, which is what actually occurred, she would have been entitled to 100% of her benefits accrued under the LTIP. (Exhibit A, p.2)

52. On January 28, 2022, through her counsel, Plaintiff mailed and emailed a request to Defendants for any document which references any procedural or administrative remedies which Ms. Faris can access to challenge the decision to terminate her employment which resulted in exclusion from any of her benefits accrued under the LTIP in accordance with ERISA Section 104(b)(4).  (Exhibit B)

53. Ms. Faris requested these documents to ensure that she exhausted any administrative procedures or plan remedies.

54. On March 28, 2022 Maria Baker, Vice President of Human Resources for the Southern Ute Indian Tribe Growth Fund, responded to the request stating that "I am not able to provide you with a copy" of any of the documents requested.  (Exhibit C)

55. As such, even if there are administrative procedures or plan remedies, Ms. Faris has been denied access to those and therefore has met her burden to exhaust any administrative procedures or plan remedies as she has not been given any information about either.

56. Ms. Faris met her obligation to exhaust administrative procedures or plan remedies and was denied meaningful access to the LTIP's administrative review, if any exists.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(ERISA §§510 and 502(a)(3) Wrongful Discipline, Wrongful Discharge, and Discrimination – 29 U.S.C. § 1140)

57. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

58. Plaintiff exercised her right to provide the company with advanced notice of her plan to retire upon reaching age 55 and 25 years of service in order to obtain a distribution of her 50% benefit in her LTIP account.

59. Defendants disciplined and discharged Plaintiff without legitimate reason or cause because she informed them of her planned retirement.

60. Plaintiff's notice of her retirement in order to obtain distribution of 50% of her LTIP account was a motivating factor for Defendants' decision to terminate her employment.

61. Defendants never warned Plaintiff nor provided any advance notice that her performance was ever below expectations.

62. In fact, in August 2021, less than 3 months before her termination, Plaintiff received a positive performance review.

63. Defendants acted with knowledge and specific intent when they wrongfully disciplined and discharged Plaintiff because of her planned voluntary retirement which prevented Plaintiff from

accessing her right to receive LTIP benefits to which she would have been entitled to upon her planned retirement date.

64. Defendants discharged, disciplined, and discriminated against Plaintiff as a LTIP beneficiary for exercising her right to retire and receive her benefits in accordance with the LTIP's distribution schedule and eligibility requirements.

65. The foregoing conduct, as alleged, constitutes a willful violation of Section 510 of ERISA.

66. As a direct and proximate result of the Defendants' violations, Plaintiff has suffered a loss of income, benefits, and privileges incurred from November 18, 2021 through the date of reinstatement or trial, as well as reasonable front pay, which amount cannot yet be ascertained, emotional distress suffered because of Defendants' unlawful conduct, and all other damages plaintiff incurred.

67. Plaintiff was, and continues to be, injured due to Defendants' violations of ERISA.

## SECOND CAUSE OF ACTION
(ERISA §§510 and 502(a)(3) Interference – 29 U.S.C. § 1140)

68. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

69. Plaintiff exercised her right to provide the company with advance notice of her plan to retire upon reaching age 55 and 25 years of service in order to attain her right to a distribution of 50% benefit in her LTIP account.

70. Defendants terminated Plaintiff's employment without legitimate reason or cause because she informed them of her planned retirement. Plaintiff's notice of her retirement in order to obtain distribution of 50% of her LTIP account was a motivating factor for Defendants' decision to terminate her employment.

71. Defendants never warned Plaintiff nor provided any advance notice that her performance was below expectations.

72. In fact, in August 2021, less than 3 months before her termination, Plaintiff received a positive performance review.

73. Defendants acted with knowledge and specific intent when they wrongfully terminating Plaintiff's employment for the purpose of interfering with Plaintiff's attainment of her right to receive LTIP benefits to which she would have been entitled to upon her planned retirement date.

74. Defendants interfered with the Plaintiff's ability to attain her right to 50% of her LTIP account which she would have been entitled to under the Plan had she not been terminated.

75. The foregoing conduct, as alleged, constitutes a willful violation of ERISA.

76. As a direct and proximate result of the Defendants' violations, Plaintiff has suffered a loss of income, benefits, and privileges incurred from November 18, 2021 through the date of reinstatement or trial, as well as reasonable front pay, which amount cannot yet be ascertained, emotional distress suffered because of Defendants' unlawful conduct, and all other damages plaintiff incurred.  Plaintiff was, and continues to be, injured due to Defendants' violations of ERISA.

**THIRD CAUSE OF ACTION**
(Breach of Fiduciary Duty to Disclose Plan Summary –29 U.S.C. 1024(b)(4))

77. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

78. Plaintiff, through her attorneys, requested copies of "the latest updated summary plan description and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or any other instrument under which the plan is established or operated.

79. Plaintiff also requested that any document which references any procedural or administrative remedies which Ms. Faris can access to challenge the decision to terminate her employment which resulted in exclusion from any of her benefits accrued under the LTIP.

80. Defendants responded to the request on March 28, 2022 refusing to provide any documents related to the LTIP.

81. As of the date of filing, defendants have failed to deliver the documents requested in Paragraph 68 and will continue to fail to provide the required documents into the foreseeable future.

82. As a direct and proximate result of Defendants' failure to provide the requested documentation as required by law, plaintiff is entitled to statutory damages specified in 29 U.S.C. 1024(b)(4).

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants and prays for:

A. Compensation for the loss of all the income, benefits, and privileges incurred from November 18, 2021 through the date of reinstatement or trial, as well as reasonable front pay, which amount cannot yet be ascertained;

B. For her accrued LTIP benefits which would have vested had she not been wrongfully terminated;

C. $100 per day from January 28, 2022 until date of final judgment for failure to disclose plan information upon written request (29 U.S.C. § 1132(c)(1));

D. Prejudgment interest and post-judgment interest;

E. Reasonable attorney fees incurred in this action, pursuant to federal law;

F. The costs of this action; and,

G. Any further relief provided by statute or law and that the Court deems just or equitable.

## VI. JURY DEMAND

Plaintiff demands a jury trial for all claims so triable.

Dated this 27th day of January 2023.

By:   s/ David T. Albrechta
*David T. Albrechta, esq.* (48431)
*Eleni K. Albrechta, esq.* (48429)
ALBRECHTA & ALBRECHTA, LLC
530 Main Avenue, Suite D3
Durango, Colorado 81301
Telephone: (970) 422-3288
E-mail: david@albrechtalaw.com
           eleni@albrechtalaw.com

*Counsel for Plaintiff, Michelle Faris*